**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| MAHMOOD SALEH MANSOOB, *et al*. | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 23-01492 (RC) |
| | : | | |
| v. | : | Re Document No.: | 39 |
| | : | | |
| ANTONY J. BLINKEN, *et al*. | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

### DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

## I. INTRODUCTION

This case concerns Plaintiffs' repeated efforts to secure derivative U.S. citizenship through their late U.S.-citizen father. Born in Yemen, Plaintiffs Mahmood Saleh Mansoob ("Mahmood"), Metwali Saleh Mansoob ("Metwali"), and Zainab Saleh Mansoob ("Zainab") (collectively, "Plaintiffs") allege that the government unlawfully refused to recognize their U.S. citizenship and issue them passports. After years of denials, they filed this action in 2023 against the government—namely, the Secretary of State, the Department of State, the U.S. Embassy in Djibouti, and the U.S. Consulate General in Jeddah (collectively, "Defendants"). Plaintiffs claimed that Defendants' refusal to issue them U.S. passports was arbitrary and unlawful under the Administrative Procedure Act ("APA") and sought a declaration both affirming their U.S. citizenship and finding that Defendants failed to perform their mandated duties.

After the suit was filed, Defendants issued Plaintiffs their U.S. passports in 2024. In turn, Plaintiffs Mahmood and Metwali petitioned for their respective children's U.S. citizenship. To complete the naturalization process, Plaintiffs' respective children and spouses, who reside in

Yemen, sought entry into the United States to attend naturalization interviews. They applied for nonimmigrant visas at a U.S. consulate. On April 4, 2025, a consular officer refused their visas, citing the need for further administrative processing. Plaintiffs moved for leave to file a Second Amended Complaint ("SAC"), seeking to add additional facts to challenge the consular officer's visa refusals. Two days later, on April 6, 2025, the consular officer denied all the applications, finding that the children and spouses had immigration intent.

On April 29, 2025, before the Court could rule on the prior motion, Plaintiffs moved for leave to file a Third Amended Complaint ("TAC"), seeking to again update the complaint to reflect changes in the facts and the case's posture from the events on April 6, 2025, when the consular officer re-adjudicated the visa applications and finally denied them. The TAC sought to challenge the consular officer's denial and add the spouses and children as additional plaintiffs.

Currently before the Court is Plaintiffs' motion to file a TAC. After careful consideration of the parties' submissions, the Court finds that the amendments reflected in the TAC are futile. Accordingly, the Court denies the motion.

## II.  BACKGROUND

### A.  Legal Background

1.  Application for Citizenship for Children Born and Residing Outside the United States and N-600K Form

Under the Immigration and Naturalization Act of 1952 ("INA"), "[a] parent who is a citizen of the United States . . . may apply for naturalization on behalf of a child born outside of the United States who has not acquired citizenship automatically," if certain conditions are met. 8 U.S.C. § 1433(a). To apply for naturalization, the U.S. citizen parent must file an Application for Citizenship and Issuance of Certificate Under Section 322 (Form N-600K) for the child.  *See*

8 C.F.R. § 322.3(a); U.S. Citizenship and Immigration Services, Policy Manual, Volume 12, Part H, Chapter 5 - Child Residing Outside the United States (INA [§] 322) (Nov. 3, 2025), https://www.uscis.gov/policy-manual/volume-12-part-h-chapter-5.  Generally, after submitting an N-600K Form, the applicant must appear in person for an interview before a U.S. Citizenship and Immigration Services ("USCIS") officer. *Id.*

### 2. Nonimmigrant Visa Applications for Child's Naturalization

Consular officers may issue a B-2 nonimmigrant visa to an "eligible foreign-born child to facilitate that child's expeditious naturalization." *See* U.S. Dep't of State, 9 Foreign Affairs Manual ("FAM") § 402.2–4(b)(7). A B-2 nonimmigrant visa allows individuals who "hav[e] a residence in a foreign country which [they have] no intention of abandoning" to enter the United States "temporarily for pleasure." 8 U.S.C. § 1101(a)(15)(B); 22 C.F.R. § 41.31(a). To get B-2 status, a noncitizen must submit a visa application which is "reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). The noncitizen is "presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa . . . that he is entitled to a nonimmigrant status." *Id.* § 1184(b) (INA § 214(b)). While "[a] child whose parents are residing abroad will generally overcome the presumption of intended immigration, if the parents do not intend to resume residing in the United States," the child's naturalization does not exempt the child from INA § 214(b), and "the child must intend to return to a residence abroad after naturalization." *Id.*

Generally, nonimmigrant visa applicants must interview with a consular officer, who must either issue or refuse the visa. *See* 22 C.F.R. § 41.121(a). When a consular officer refuses a visa, he or she must inform the applicant of the ground(s) of ineligibility. *Id.* § 41.121(b)(1).

Nonimmigrant visa refusals must be based on legal grounds, such as one or more provisions of the INA or other applicable law. *Id.* § 41.121(a).

### B. Factual and Procedural Background

Plaintiffs are Yemeni-Americans who have long sought to obtain derivative citizenship from their late father, Saleh Mansoob, a naturalized U.S. citizen originally from Yemen. Plaintiffs' father became a citizen in 1960. *See* First Am. Compl. ("FAC") ¶ 20–21, ECF No 15. In 1964, Saleh Mansoob returned to Yemen after a death in the family, leaving the United States for the first time since 1953. *Id.* ¶ 24. Three years later, he applied to renew his U.S. passport at the U.S. Embassy in Aden, Yemen. *Id.* ¶ 24. While awaiting renewal, the Embassy closed, leaving Saleh Mansoob without a U.S. passport. *Id ¶* 25. Plaintiffs were later born in Adhalea, Yemen, in the 1980s. *Id.* ¶ 27–29. Saleh Mansoob passed away in 1993. *Id.* ¶ 33.

In 1994, Plaintiffs applied to obtain U.S. citizenship at the Embassy of Sana'a, Yemen, and provided DNA testing indicating that Plaintiffs were the biological children of Saleh Mansoob. *Id.* ¶ 35. All the applications were denied. *Id.* Over the years, from 2000 to 2016, Plaintiffs repeatedly sought to establish their citizenship and obtain U.S. passports, but their applications were denied.[1] Plaintiffs allege that the denials stemmed from Defendants' discriminatory policies and practices on the adjudication of immigration applications from Yemeni-American applicants. *See* Proposed Third Am. Compl. ("TAC") ¶¶ 198–209, ECF No. 39.

---

[1] In 2000, the U.S. Embassy of Sana'a denied Plaintiffs' applications to obtain U.S. passports. FAC ¶¶ 37, 39. In 2014, the U.S. Embassy of Sana'a denied Plaintiffs' reapplications for U.S. citizenship. *Id.* ¶ 40. In 2015, U.S. Embassy of Jeddah denied Plaintiff Mahmood's reapplication for a U.S. passport. *Id.* ¶¶ 41–42. In 2016, the U.S. Embassy in Djibouti denied Plaintiff Metwali's reapplication for a U.S. passport. *Id.* ¶¶ 43–44.

Finally, in May 2023, Plaintiffs submitted applications for Certificates of Identity and an application for a U.S. passport to the U.S. Embassy in Djibouti. FAC. ¶¶ 44–45. While their applications were pending, Plaintiffs brought this action against Defendants, asserting claims under the APA (Count One) and the Declaratory Judgment Act (Count Two). Compl, ECF No. 1.

In January 2024, Plaintiffs filed a First Amended Complaint ("FAC"). *See* FAC. In addition to the prior claims (Counts One and Two), the FAC asserted a new Equal Protection claim (Count Three) and several claims under the Federal Tort Claims Act ("FTCA") for negligence and intentional and negligent infliction of emotional distress (Counts Four, Five, and Six). *Id.* ¶¶ 98–170. Defendants then moved to dismiss the FAC. Def.'s Mot. to Dismiss FAC, ECF No. 18.

After the FAC was filed, Defendants issued a U.S. passport to Plaintiff Zanaib. *See* Notice of Voluntary Dismissal, ECF No. 22. As a result, in March 2024, Plaintiff Zanaib voluntarily dismissed her claims. *See id.* at 2. Plaintiffs also voluntarily dismissed the FTCA claims completely (Counts Four, Five, and Six). *Id.* After Plaintiffs' voluntary dismissal, the only claims that remained were the APA claim (Count One); the Declaratory Judgment Act claim (Count Two); and the Equal Protection claim (Count Three).

In October 2024, before the Court could rule on Defendants' motion to dismiss the FAC, Defendants issued U.S. passports to Plaintiffs Mahmood and Metwali. *See* Ex. Q at 1, ECF No. 31-1; Ex. UU at 1, ECF No. 31-1. Accordingly, the Court denied as moot Defendants' motion to dismiss the FAC, as the arguments made in the motion were no longer responsive to the factual and legal circumstances. *See* Minute Entry (June 2, 2025).

After the issuance of their passports, Plaintiffs Mahmood and Metwali sought the naturalization of their respective children under INA § 322. *See* TAC ¶¶ 67–69. Plaintiffs filed

N-600K Forms on behalf of their children, who reside in Yemen with Plaintiffs. *Id.* On February 27, 2025, USCIS issued appointment notices for all nine children to appear at the Montgomery Field Office in Alabama on March 15, 2025. *Id.* ¶ 70. To attend their appointments, each of the children and spouses applied for nonimmigrant visas at the U.S. Consulate General in Riyadh.[2] *Id.* ¶ 73. A consular officer "refused" these applications due to administrative processing under 8 U.S.C. § 1201(g) (INA § 221(g)). *Id.*

On April 4, 2025, Plaintiffs Mahmood and Metwali sought leave to file a SAC to add their respective children and spouses as plaintiffs, add facts pertaining to the consular officer's refusal of their nonimmigrant visa applications, and challenge the refusal under the APA and the Equal Protection clause. *See* Proposed Second Am. Compl. ("SAC") ¶¶ 8–11, 17–28, 65–76, 199, ECF No. 30. Two days later, on April 6, 2026, a consular officer finally denied the spouses and children's nonimmigrant visa applications under 8 U.S.C. § 1184(b) (INA § 214(b)), citing immigration intent. TAC. ¶ 79.

On April 29, 2025, before the Court could rule on Plaintiffs' request for leave to file a SAC, Plaintiffs moved for leave to file this TAC. *See* Pls.' Mot. for Leave to Amend, ECF No. 39. Like the SAC, the TAC adds as plaintiffs the spouses and children but updates the facts to reflect the April 6, 2025 visa denials. As is relevant to the spouses and children, the TAC asserts the following: (a) The consular officer's denials of the children's nonimmigrant visa applications were arbitrary and not in accordance with law and thus violated the APA; and (b) Defendants' policies and practices for adjudicating immigration benefits for Yemeni-American applicants are intended to deter, delay, or otherwise prevent Yemeni-Americans from obtaining

---

[2] The TAC does not make clear whether the spouses also had naturalization interviews. Nevertheless, the TAC does allege that the spouses applied for nonimmigrant visas as well. *See* TAC ¶ 73.

those benefits, in violation of the Equal Protection clause. TAC ¶¶ 155, 198–209. The TAC prays that this Court "[e]njoin Defendants from preventing Plaintiffs['] [children] from traveling to the United States to obtain Certificates of Citizenship." TAC at 35, ¶ 3 (Prayer for Relief). Defendants opposed the motion. *See* Defs.' Opp'n at 3, ECF No. 43. The motion is now fully briefed and ready for the Court's consideration.

## III.  LEGAL STANDARD

While "[t]he decision to grant or deny leave to amend 'is committed to a district court's discretion,'" *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 678 F. Supp. 3d 62, 69 (D.D.C. 2023) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)), courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts should "freely give" leave to amend in the absence of one of the following: "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [or 5] futility of amendment." *Foman*, 371 U.S. at 182. An amendment is futile when it "merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Klotzbach-Piper*, 678 F. Supp. 3d at 69 (quoting *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012)).

## IV.  ANALYSIS

The proposed TAC seeks to add Mahmood and Metwali's respective spouses and children as additional plaintiffs and facts pertaining to the consular officer's denial of their visa applications. The TAC prays that this Court enjoin Defendants from denying the children entry

into the United States so that the children can attend their naturalization interviews. Such amendments, however, are futile.

First, Plaintiffs lack standing to bring their Equal Protection claim; Plaintiffs have failed to show that the visa denials are traceable to the challenged policies, nor does the TAC allege that the spouses or children face a substantial risk of immediate harm from such policies. Second, Plaintiffs lack standing to seek an order that the children's visas be issued; the Court cannot grant such relief. Finally, even if Plaintiffs were entitled to any judicial review of the denials, notwithstanding the consular nonreviewability doctrine, such review is limited. And under that limited review, the visa denials were valid. Accordingly, the Court denies Plaintiffs' motion.

### A. Plaintiffs' Standing

For a court to have jurisdiction over a case or controversy, the party invoking the court's jurisdiction has the burden of establishing their standing. *NO Gas Pipeline v. FERC*, 756 F.3d 764, 767 (D.C. Cir. 2014). "An individual has Article III standing to sue when she can show: (1) she has suffered an 'injury in fact' that is concrete and particularized, and actual or imminent rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 596 (D.C. Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). As explained below, Plaintiffs have not established their spouses and children's standing to pursue their Equal Protection claim nor have they shown standing to pursue an order from this Court issuing the children nonimmigrant visas.

1.  Equal Protection Claim

Plaintiffs allege that a "Yemeni Adjudication Policy" exists for adjudicating immigration benefits for Yemeni-American applicants. TAC ¶ 86. According to Plaintiffs, the policy is "applied to all applications, petitions, or request[s] for immigration benefits," and is intended to deter, delay, or otherwise prevent Yemeni-Americans from obtaining those benefits. *See id.* ¶¶ 109, 192–210. Due to this policy, Plaintiffs contend, the spouses and children's nonimmigrant visas were denied. *Id.*

Plaintiffs, however, have not established that such a policy is "fairly traceable" to the named Defendants, that is, the Secretary of State, the Department of State, the U.S. Embassy in Djibouti, or the U.S. Consulate General in Jeddah. *See NO Gas Pipeline*, 756 F.3d at 767. Rather, the alleged practices stem from U.S. Citizenship and Immigration Services ("USCIS") policies concerning the adjudication of immigrant visa petitions. *See* TAC ¶ 107. Although Plaintiffs cite a cable issued by the U.S. Embassy in Sana'a in 2009, *see id.*, the U.S. Embassy in Sana'a has since closed, *id.* ¶¶ 37, 114, long before the spouses and children's nonimmigrant visas were denied in 2025, *id.* ¶ 78.[3] And Plaintiffs cite no other policy of the named Defendants. Article III standing, however, requires that Plaintiffs' injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). While Plaintiffs assert that the 2009 cable is indicative of "pactices and policies [that] have existed for [the] past several decades," TAC ¶ 114, "mere unadorned speculation as to the existence of a relationship" between the challenged

---

[3] Moreover, the 2009 cable issued by the U.S. Embassy in Sana'a cable postdates the denial of Plaintiffs Mahmood and Metwali's initial passport applications by thirteen years, as a consular officer at the U.S. Embassy in Sana'a denied those applications in 1996. TAC ¶¶ 59–64.

action and the third-party conduct "will not suffice to invoke the federal judicial power," *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 50 (D.C. Cir. 2016) (citation modified). Plaintiffs have thus failed to establish that the nonimmigrant visa application denials are fairly traceable to the identified policies, and they therefore lack standing. *See Kimelman v. Garland*, 588 F. Supp. 3d 84, 87–88 (D.C. Cir. 2022).

Moreover, Plaintiffs fail to establish that the spouses and children's injury, the denial of their nonimmigrant visa applications, can likely be redressed by a favorable decision from this Court—namely, an order enjoining the alleged policies. Injunctive relief is prospective, that is, "forward-looking relief." *See Murthy v. Missouri*, 603 U.S. 43, 45 (2024). And "to obtain forward-looking relief," plaintiffs "must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Id.*; *see also Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021). Here, Plaintiffs acknowledge that the identified policies, the USCIS policy and the 2009 cable issued by the U.S. Embassy in Sana'a, are no longer in effect. The USCIS policy was rescinded in 2021, *see* Ex. HH, ECF No. 15-1, and the U.S. Embassy in Sana'a has since closed, TAC ¶ 114.[4]  Furthermore, Plaintiffs' injuries are in the past. A consular officer has already made a final decision to deny the applications and not issue the nonimmigrant visas. TAC ¶ 79. And Plaintiffs do not allege that they are eligible to reapply for nonimmigrant visas and that they intend to do so.[5] *See Jibril*,

---

[4] Additionally, even if Plaintiffs had standing to challenge these policies, their claims would be moot, as the policies no longer exist. *See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006) ("[Plaintiff] claims only that the memo was issued in violation of NEPA," but "[b]ecause the memo has expired, this claim is moot.").

[5] Generally, if an applicant is found to be ineligible for a visa under INA § 214(b), the applicant seeking to reapply for a visa must be able to present evidence of significant changes in their circumstances since their last application. *See* U.S. Department of State, *Visa Denials*, Travel.State.Gov (Nov. 11, 2025). Plaintiffs have not alleged that any significant changes in their relevant circumstances have occurred since their last application.

20 F.4th at 812 ("[B]ecause the Jibrils do not plausibly allege that these alleged violations will recur, Appellants fail to establish any imminent injuries with respect to these purported policy violations."). Therefore, Plaintiffs have failed to establish that the spouses and children face a substantial risk of future harm from the alleged policies and practices. *See Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1280 (D.C. Cir. 2012) ("[A] plaintiff must establish a real and immediate threat that the harm-producing conduct will recur.")

Because Plaintiffs' injuries are not fairly traceable to the identified policies, nor would a favorable decision from this Court redress those injuries, Plaintiffs (the spouses and children) thus lack standing to bring their Equal Protection claim. *Kimelman*, 588 F. Supp. 3d at 87–89. Any amendment to add them as additional plaintiffs for purposes of that claim would be futile. *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010) ("[A] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss.").

### 2.  Ordering that the Children's Visas be Issued

The TAC asks this Court to "[e]njoin Defendants from preventing [Plaintiffs' children] from traveling to the United States to obtain Certificates of Citizenship." TAC at 35, ¶ 3 ("Prayer for Relief"). In other words, the relief Plaintiffs seek is for the Court to order a consular officer to approve the children's nonimmigrant visa applications and issue such visas. But this Court "is without jurisdiction to order an American consular official to issue a visa to any alien whether excludable or not." *Loza-Bedoya v. Immigr. and Naturalization Serv.*, 410 F.2d 343, 347 (9th Cir. 1969) (citing 8 U.S.C. § 1201(a)); *see also U.S. ex rel. Ulrich v. Kellogg*, 30 F.2d 984, 985–96 (D.C. Cir. 1929) ("[T]he authority to issue a visa is committed to 'consular' officers.") (affirming the denial of a writ of mandamus seeking to require: "the American consul at Berlin to

issue a visa to [petitioner's] wife," "the Secretary of State to instruct and direct the American consul to that effect," and "the Secretary of Labor to instruct the immigration inspectors in Berlin to approve and advise the issuance of a visa to [petitioner's] wife."). Thus, the Court cannot grant Plaintiffs the relief they seek. Plaintiffs thus fail to satisfy the redressability requirement of standing for this form of relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press and *for each form of relief that they seek* (for example, injunctive relief and damages)." (emphasis added)).

### B. Plaintiffs' APA Claim and the Consular Nonreviewability Doctrine

Although the Court cannot order that the children's visas be issued, the Court can "set aside agency action[s]" under the APA, when such actions are, among other things, "not in accordance with law"; "contrary to [a] constitutional right, power, privilege, or immunity;" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) –(C). The TAC alleges that the consular officer's decision to deny the children's visa applications violated the APA, as the decision was purportedly arbitrary and capricious, not in accordance with law, and contrary to a constitutional right. TAC ¶¶ 170–176. In particular, the TAC contends that the consular officer's denial rested on an erroneous finding that the children intended immigration, despite a presumption that "[a] child whose parents are residing abroad" intends to reside abroad after naturalization. *Id.* ¶ 82. But the consular nonreviewability doctrine bars judicial review of consular officer visa decisions. Even if Plaintiffs were entitled to such review, the review is limited. And under that limited review, the visa denials were valid.

The INA "does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." *Dep't of State v. Munoz*, 602 U.S. 899, 908 (2024). "Deciding who is allowed into the United States and who is not can involve

hard policy choices." *Colindres v. United States Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023), *cert. denied sub nom. Colindres v. Dep't of State*, 144 S. Ct. 2716 (2024). "Denying a visa may 'implicate' America's relationship with 'foreign powers' or require evaluating 'changing political and economic circumstances.'" *Id*. (quoting *Trump v. Hawaii*, 585 U.S. 667 (2018)). "For that reason, 'the power to exclude aliens' is 'a power to be exercised exclusively by the political branches,' with limited judicial review." *Id*. (quoting *Kiyemba v. Obama*, 555 F.3d 1022, 1025 (D.C. Cir. 2009)). This principle, known as the doctrine of consular nonreviewability, "shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rau Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).

However, there are two narrow exceptions to the doctrine of consular nonreviewability. *Id*. The first occurs when Congress enacts a specific statue that "expressly authoriz[es] judicial review of consular officers' actions." *Id*. at 1025 (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)). The second occurs when the consular officer's action "allegedly burdens the constitutional rights of a U.S. citizen." *See Munoz*, 602 U.S. at 908 (quoting *Hawaii*, 585 U.S. at 703). When there is such a burden, the consular officer's decision to deny the visa is valid only when made "on the basis of a facially legitimate and bona fide reason." *Kerry v. Din*, 576 U.S. 86, 104 (2015) (Kennedy, J., concurring). In that instance, the Court's review is narrow, limited to determining "whether the [consular officer] gave a 'facially legitimate and bona fide reason' for denying the visa." *Munoz*, 602 U.S. at 908 (quoting *Din*, 576 U.S. at 103–104); *Colindres*, 71 F.4th at 1021.

Here, Plaintiffs have not shown that Congress has "expressly authorized" judicial review of the consular officer's visa denials. *Colindres*, 71 F.4th at 1021 ("[The first] [consular nonreviewability] exception is not at issue here because the Colindreses have pointed to no

statute that allows review."). Thus, this Court can review the consular officer's decision only if the denial of their visa applications burdened a U.S. citizen's constitutional right. *Munoz*, 602 U.S. at 90. Plaintiffs Mahmood and Metwali contend that they have a protected liberty interest in their N-600K petitions. Pl.'s Reply at 11–13. But even if the Court assumes that the visa denials burdened Mahmood and Metwali's constitutional rights, the consular officer's denial was based on a facially legitimate and bona fide reason and is therefore valid.

The consular officer's obligation to provide a "facially legitimate and bona fide reason" for the visa denial "is easy to satisfy," *Colindres*, 71 F.4th at 1024, and can be fulfilled by simply providing notice of the statutory provision under which the visa was denied, *Din*, 576 U.S. at 102–104; *Hawaii*, 585 U.S. at 703 ("[T]he Government need provide only a statutory citation to explain a visa denial."). "Once this standard is met, 'courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against' the constitutional interests of citizens the visa denial might implicate." *Din*, 576 U.S. at 104 (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)). "Unless an applicant can affirmatively show bad faith by the consular officer, courts are not to 'look behind' the Government's exclusion of [the visa applicant] for additional factual details." *Id*. at 105 (quoting *Mandel*, 408 U.S. at 770); *see also Colindres*, 71 F.4th at 1025 (an affirmative showing of bad faith on the part of the consular officer can demonstrate the government failed to give a bona fide reason for its actions).

In denying the children's visa applications, the consular official cited INA § 214(b), which states that a noncitizen "shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa . . . that he is entitled to a nonimmigrant status." 8 U.S.C. § 1184(b); *see* TAC ¶ 79. By providing a statutory citation to explain the visa denials, the consular officer here satisfied his obligation to provide a "facially

legitimate and bona fide reason." *Din*, 576 U.S. at 102–04; *Colindres*, 71 F.4th at 1024. The denials are thus valid, and the Court's inquiry ends. *Colindres*, 71 F.4th at 1021 ("Courts ask only whether the government has given 'a facially legitimate and bona fide reason' for denying a visa." (quoting *Mandel*, 408 U.S. at 770)).

Plaintiffs' attempt to compel this Court to "look behind" this "facially legitimate and bona fide" reason is unavailing. Plaintiffs allege that the consular officer here acted in bad faith when denying the visas because "[a] child whose parents are residing abroad will generally overcome the presumption of intended immigration, if the parents do not intend to resume residing in the United States." 9 FAM § 402.2–4(B)(7) ("Children Seeking Expeditious Naturalization under INA [§] 322"); TAC ¶ 82.

Plaintiffs overlook, however, that "[t]he child's intended naturalization, however, does not exempt the child from INA [§] 214(b); the child must intend to return to a residence abroad after naturalization." 9 FAM 402.2–4(B)(7). And under INA § 214(b), "[e]very alien . . . shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and the immigration officers, at the time of application for admission, that [they are] entitled to a nonimmigrant status." 8 U.S.C § 1184(b). Evidently, the consular officer here did not find that the evidence the spouses and children presented to support an intent to return to Yemen was sufficient to overcome the presumption of immigration. And "courts 'presume' that 'public officers' have 'properly discharged their official duties.'" *Colindres*, 71 F.4th at 1025 (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926)). Thus, "a litigant must provide 'clear evidence' of bad faith." *Id*.

Plaintiffs allege that the consular officer acted in bad faith because "Defendants had substantial evidence before them of the residence and work in Yemen that Plaintiff Mahmood

and Metwali were engaged in, the children's enrollment in school, and the lack of intent to move to the United States." TAC ¶ 83. "But disagreeing with the Government's decision to discount that evidence falls well short of the kind of clear showing necessary to establish bad faith." *Colindres*, 71 F.4th at 1021. Plaintiffs allege no other facts in support of their bad faith claim. Rather, the TAC makes only conclusory statements that "the Defendants have acted in bad faith as a retaliation against the Plaintiffs" and "Defendants' conduct was done in bad faith against the Plaintiffs." TAC ¶¶ 173, 204. Such allegations are insufficient. Because the TAC lacks any non-conclusory factual allegations that might plausibly suggest that the consular officer here acted in bad faith when denying the visas, the consular officer's reason for denial is both facially legitimate and bona fide.

The Court does not take lightly the potential hardship that the consular officer's decision may have caused the Mansoob families. But the children's visa denials would survive the Court's inquiry even if Plaintiffs established entitlement to reviewability, notwithstanding the doctrine of consular nonreviewability. Thus, any amendment to the complaint to include the children as additional plaintiffs, facts regarding their visa denials, and APA claims based on those denials would be futile.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to file a third amended complaint (ECF No. 39) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 27, 2026                                      RUDOLPH CONTRERAS
                                                             United States District Judge